UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| ARCHER DANIELS MIDLAND, INC., | |
| Plaintiff, | |
| v. | CAUSE NO.: 4:20-CV-60-TLS-APR |
| LNG INDY LLC d/b/a KINETREX ENERGY, | |
| Defendant. | |

**OPINION AND ORDER**

This matter is before the Court on the Defendant's Motion to Dismiss or in the Alternative Transfer Venue [ECF No. 10], and the Plaintiff's Motion for Leave to File Surreply [ECF No. 14]. For the reasons set forth below, the Court denies both motions.

**BACKGROUND**

On July 14, 2020, the Plaintiff Archer Daniels Midland, Inc. filed its Complaint [ECF No. 1] in this Court against the Defendant LNG Indy LLC d/b/a Kinetrex Energy. The Complaint arises out of a grain dryer fire that occurred on November 6, 2019, at the Plaintiff's grain drying facility in Parr, Indiana. Compl. ¶¶ 35–42. The Plaintiff alleges that deficiencies in the Defendant's design, selection, and monitoring of equipment for the mobile storage and vaporization of liquified natural gas ("LNG") that the Defendant brought to the Plaintiff's facility incapacitated the Plaintiff's gas shut-off system connected to the grain dryer, preventing the discontinuation of the fuel supply to the dryer. *Id*. at ¶¶ 40, 47–52, 66–78, 100–05, 118–31. These deficiencies led to an unanticipated heat build-up and, ultimately, a fire that caused property damage and business losses in the form of destroyed inventory, lost drying opportunities, lost revenue, and transportation charges. *Id*. at ¶¶ 44, 78–82, 131–35. Count I

alleges a claim of negligent design, selection, and installation of the equipment, *id.* at ¶¶ 45–97, and Count II alleges a claim of negligent failure to warn and monitor, *id.* at ¶¶ 98–146.

Previously, on February 7, 2019, the parties entered into a "Liquified Natural Gas Spot Purchase Agreement" ("Spot Purchase Agreement"). Def.'s Br. Ex., ECF No. 11-1. The Spot Purchase Agreement outlined the volume of LNG that the Plaintiff could purchase from the Defendant, the one-year term of the agreement, the price per dekatherm of the LNG, and the payment of taxes, fees, penalties, licenses, or charges imposed by the government with respect to the LNG before and after passage of title of the LNG. *Id.* at p. 1. The Spot Purchase Agreement and "the transactions contemplated [thereby]" were subject to and included the Defendant's "LNG Standard Terms and Conditions" ("Terms and Conditions"). *Id.* at p. 1, p. 2, ¶ 1.

The Terms and Conditions contain the following relevant provisions. The Defendant "represents and warrants that the LNG supplied under this Agreement will conform to the Specifications," and the "Specifications" provide that the LNG supplied shall contain "Methane Number: Minimum of 85"; "Lower Heating Value (LHV): Minimum 900 BTU/SCF"; "Sulfur % weight: 0%"; "Hydrogen % volume: 0%." *Id.* at p. 2, ¶¶ 5–6. Relating to title and risk of loss of LNG: "All LNG shall be delivered to [the Plaintiff] FOB Destination, and title to and risk of loss of LNG shall pass [to the Plaintiff] when the LNG exits the feed valve of the LNG transport trailer." *Id.* at p. 2, ¶ 3. The limitation on liability provides that the Plaintiff's sole remedy for any breach of the Defendant's representation and warranty that the LNG will conform to the specifications "shall be a refund of the applicable portion of the Purchase Price." *Id.* at p. 2, ¶ 5. In addition, "[t]he liability of either party to the other for any claim arising out of this Agreement shall be for direct damages only in amount equal to the payments made by [the Plaintiff] to [the Defendant] during the twelve (12) month period prior" to the date the claim arose. *Id.*

The payment provision in the Spot Purchase Agreement provides that transferred LNG will be measured at the Defendant's scales at its LNG facility and that the Defendant will issues invoices to the Plaintiff "on a daily basis for LNG supplied hereunder." *Id.* at p. 2, ¶ 7. The indemnity provision provides, in relevant part:

> Except to the extent arising from the negligence or willful misconduct of [the Defendant], [the Plaintiff] shall defend, indemnify and hold harmless [the Defendant] . . . from any third-party claims for personal injury or property damage . . . arising or alleged to arise *after title and risk of loss pass to [The Plaintiff]* . . . from (a) the negligent use, handling, alteration, modification, treatment, storage, disposal, transportation, maintenance, or resale by [the Plaintiff] *of any LNG*, (b) [the Plaintiff's] breach of any terms, conditions, representations, warranties or covenants stated herein, or (c) any negligent act or omission of [the Plaintiff] . . . . The Foregoing indemnification shall not be construed to eliminate or in any way reduce any other indemnification or right which [the Defendant] has by law.
>
> Except to the extent arising from the negligence or willful misconduct of [the Defendant], [the Defendant] shall defend, indemnify and hold harmless [the Plaintiff] . . . from any third-party claims for personal injury or property damage . . . arising or alleged to arise *before title and risk of loss pass to [the Plaintiff]* … from (a) the negligent use, handling, alteration, modification, treatment, storage, disposal, transportation, maintenance *of any LNG*, (b) [the Defendant's] breach of any terms, conditions, representations, warranties or covenants stated herein, or (c) any negligent act or omission of [the Defendant] . . . . *The Foregoing indemnification shall not be construed to eliminate or in any way reduce any other indemnification or right which [the Plaintiff] has by law.*

*Id.* at p. 2, ¶ 8 (emphasis added).

Finally, the forum-selection clause, which is the basis of the Defendant's instant motion, provides: "The parties hereby consent to the exclusive jurisdiction and service of process of and venue in the federal and/or state courts located in Marion County, Indiana in the event of any suit *arising out of this Agreement.*" *Id.* at p. 2, ¶ 13 (emphasis added).

## ANALYSIS

The Defendant seeks dismissal of this action under Federal Rule of Civil Procedure 12(b)(3) for improper jurisdiction or venue or, in the alternative, for transfer of venue under 28

3

U.S.C. § 1404(a). The Defendant argues that the forum-selection clause in the Spot Purchase Agreement controls such that the federal and state courts located in Marion County, Indiana, which is within the United States District Court for the Southern District of Indiana, have exclusive personal jurisdiction and exclusive venue over this lawsuit. The Plaintiff responds that the forum-selection clause is not applicable to its claims in the Complaint and that venue is proper in this district. Because venue is proper in this district, the Court considers the motion under § 1404(a), finding that the forum-selection clause does not apply to the Plaintiff's claims and that the convenience and interest of justice factors do not weigh in favor of transfer.

*1.     Legal Standard*

In a civil case in which venue is initially proper under 28 U.S.C. § 1391, a motion to transfer under 28 U.S.C. § 1404(a) is the appropriate vehicle to enforce a forum-selection clause that points to a particular federal district. *See Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 52, 55, 59 (2013).[1] Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Normally, in a case not involving a forum-selection clause, the factors to consider under § 1404(a) are (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interest of justice. *Id.*; *see also Alt. Marine*, 571 U.S. at 62.

---

[1] The Supreme Court explained that a "case filed in a district that falls within [28 U.S.C.] § 1391 may not be dismissed under § 1406(a) or Rule 12(b)(3)." *Atl. Marine*, 571 U.S. at 56. Section 1406(a) allows for dismissal or transfer of venue when a case is filed in the "wrong district," and Rule 12(b)(3) permits a defendant to move to dismiss for "improper venue." *See* 28 U.S.C. § 1406(a); Fed. R. Civ. P. 12(b)(3); *see also Atl. Marine*, 571 U.S. at 55. And, the question of whether venue is "wrong" or "improper" is governed exclusively by the federal venue laws without regard to whether the parties entered into a contract containing a forum-selection clause. *Atl. Marine*, 571 U.S. at 52, 55, 56. Also, if a forum-selection clause points to a state or foreign forum, the appropriate way to enforce the clause is through the doctrine of *forum non conveniens*. *Id.* at 60.

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Atl. Marine*, 571 U.S. at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). In that instance, the "valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id*. (quoting *Stewart*, 487 U.S. at 33). In addition, consideration of a valid forum-selection clause requires three adjustments to the traditional analysis. *Id*. First, the plaintiff's choice of forum carries no weight. *Id*. Second, a court should not consider arguments about the parties' private interests but only about public-interest factors. *Id.* at 64. Third, the § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules, which is normally a factor that can sometimes affect public-interest considerations. *Id.*

2.  *This Litigation*

    a.  Venue in this District

First, the parties do not dispute that venue is proper in this district under § 1391(b)(2), which provides that "[a] civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated . . . ." 28 U.S.C. § 1391(b)(2). The Plaintiff's grain dryer that was allegedly destroyed as a result of the Defendant's actions and inactions is located in Parr, Indiana, which is in Jasper County within the United States District Court for the Northern District of Indiana. Because venue is proper in this district, the Defendant's motion is governed by § 1404(a). *See Atl. Marine*, 571 U.S. at 52, 59.

    b.  Applicability of the Forum-Selection Clause

The next question is whether the forum-selection clause in the Spot Purchase Agreement is applicable to the instant lawsuit. The clause provides: "The parties hereby consent to the exclusive jurisdiction and service of process of and venue in the federal and/or state courts

located in Marion County, Indiana in the event of any suit *arising out of this Agreement.*" Def.'s Br. Ex., p. 2, ¶ 13 (emphasis added). In its brief, the Defendant characterizes the forum-selection clause as "broad" such that it "encompasses all tort or extracontractual claims made by" the Plaintiff "relating to" the Plaintiff's purchase of LNG from the Defendant and the Defendant's "provision of the same." Def.'s Br. 4, ECF No. 11. Yet, the Defendant offers no specific analysis of the Spot Purchase Agreement or the Complaint, arguing only generally that the allegations of the Complaint "relate entirely to the Defendant's purchase of LNG from the Defendant and the Defendant's corresponding provision of LNG." *Id.* (citing Compl. ¶¶ 25–44). In contrast, the Plaintiff provides a detailed analysis of the Complaint and the terms of the Spot Purchase Agreement. The Court finds that the allegations of the Plaintiff's Complaint, which are based on the Defendant's design, selection, installation, and monitoring of LNG storage and vaporization equipment, do not "arise out of" the Spot Purchase Agreement, which governs the purchase, sale, and delivery of the commodity LNG.

First, neither the Spot Purchase Agreement nor its Terms and Conditions is referenced in the Complaint or attached as an exhibit. The Complaint does not assert a breach of contract or any warranty claims pursuant to the Spot Purchase Agreement. And, the allegations of the Complaint do not arise out of the purchase of the LNG delivered under the terms of the Spot Purchase Agreement. Nor has the Plaintiff alleged a tort claim related to the delivery of the LNG or to Spot Purchase Agreement. Rather, the allegations are based on the Defendant's equipment in use and monitoring services provided at the Plaintiff's facility *after* the LNG was delivered and title to the LNG transferred to the Plaintiff. The Plaintiff seeks damages for the Defendant's alleged negligent design, selection, installation, and monitoring of the equipment at the Parr, Indiana facility and the Defendant's alleged negligent failure to warn the Plaintiff and to monitor the equipment.

6

As for the contract itself, the Plaintiff argues that the Spot Purchase Agreement should not be construed as anything other than a contract for the purchase, sale, and delivery of LNG—a commodity. A "spot transaction" is an agreement for the purchase and sale of commodities that anticipate near-term delivery. *See Dunn v. Commodity Futures Trading Comm'n*, 519 U.S. 465, 472, 472 n.9 (1997) (citing 1 T. Snider, Regulation of the Commodities Futures and Options Markets § 9.01 (2d ed. 1995)). As set forth in detail in the Background above, the Spot Purchase Agreement contains detailed provisions addressing pricing, purchase volume, the term of the agreement, specifications, delivery, transfer of title, risk of loss, damages, limitations on liability, and indemnity all related to the purchase and delivery of LNG. Absent from the Spot Purchase Agreement is any reference to the Defendant's equipment, the installation of the equipment, or the Defendant's monitoring of the equipment at the Plaintiff's facility or to any liabilities in the event of damage to or caused by that equipment and/or monitoring.

More specifically, the Spot Purchase Agreement set out the price of the LNG and requires that the Defendant provide daily invoices for the LNG supplied under the Spot Purchase Agreement, but there is no provision regarding payment for the equipment or costs associated with the equipment. Although the Spot Purchase Agreement provides specifications for the LNG, it does not mention the equipment or provide specifications for the equipment. The provision governing transfer of title and risk of loss speaks only to the LNG itself and occurs when the LNG exits the feed valve of the LNG transport trailer and presumably before the LNG enters the equipment the Defendant selected, delivered to the Plaintiff's facility, and monitored at the Plaintiff's facility. In contrast, there is no provision addressing title and risk of loss to the equipment supplied by the Defendant. The damages provision limits the Plaintiff's remedy to a refund of the applicable portion of the purchase price of the LNG should the Defendant breach its warranty that the LNG supplied under the Agreement will conform to the specifications. And,

as to liability for any claim "arising out of the Agreement," direct damages are limited only to an amount equal to the payments for the LNG for the previous twelve months. The damages provision is silent as to the Defendant's equipment as well as to the Plaintiff's facility where the equipment was located for use after the delivery of the LNG.

Likewise, the indemnity provision relates only to the LNG with no reference to the Defendant's equipment. Nor is there any reference to indemnification or limitations for property damage experienced by the Plaintiff that is caused by the Defendant's negligent selection, design, use, installation, or monitoring of the equipment. Notably, the indemnity provision has a carve out: "the Foregoing indemnification shall not be construed to eliminate or in any way reduce any other indemnification or right which [the Plaintiff] has by law." Def.'s Br. Ex., p. 2, ¶ 8. Finally, the Spot Purchase Agreement provides that this "constitute[s] the entire agreement between the Parties hereto *with regard to the supply of LNG* to [the Plaintiff] at the LNG facility by [the Defendant]." *Id.* at ¶ 16 (emphasis added). There is no similar language with regard to the equipment and monitoring services.

The Defendant is correct that a broad forum-selection clause may be enforced as to both contract and tort claims. *See Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 680 (7th Cir. 2007) (citing *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 888–89 (7th Cir. 2004)); *Hugel v. Corp. of Lloyds*, 999 F.2d 206, 209 (7th Cir. 1993). This is because "a plaintiff cannot defeat a forum-selection clause 'by its choice of provisions to sue on, of legal theories to press, and of defendants to name in the suit.'" *Kochert*, 491 F.3d at 679 (quoting *Am. Patriot Ins. Agency*, 364 F.3d at 888).

However, the tort claims must nevertheless be within the scope of the specific forum-selection clause. For example, in *Kochert*, the clause provided: "Buyer agrees to consent to jurisdiction, venue and forum in the State Court of Fulton County, Georgia." 491 F.3d at 676.

The court found that this broad language—language that is broader than the "arising out of" clause in the instant case—encompassed the plaintiff's fraudulent inducement claim, noting that the clause contained "no language limiting its application to claims 'arising out of, in connection with, or in relation to the interpretation, performance or breach' of the contract." *Id*. at 679. The court explained that "the existence of multiple remedies for wrongs arising out of a contractual relationship does not obliterate the contractual setting, does not make the dispute any less one arising under or out of or concerning the contract, and does not point to a better forum for adjudicating the parties' dispute than the one they had selected to resolve their contractual disputes." *Id.* at 680 (quoting *Am. Patriot Ins. Agency*, 364 F.3d at 889).

Similarly, in *Hugel*, the court found that the plaintiff's claim of tortious interference with a business relationship was covered by the forum-selection clause, which provided: "[T]he courts of England shall have exclusive jurisdiction to settle any dispute and/or controversy of whatsoever nature *arising out of or relating to* the Member's membership . . . ." *Hugel*, 999 F.2d at 208. The court reasoned, "Regardless of the duty sought to be enforced in a particular cause of action, if the duty arises from the contract, the forum selection clause governs the action." *Id.* at 209.

In its reply brief, the Defendant cites two additional cases addressing "arising out of" language. In *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress International, Ltd.*, in the context of an arbitration clause, the court held that the phrase "'arising out of' reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se." 1 F.3d 639, 642 (7th Cir. 1993). In *Sweet Dreams*, the issue was whether "a dispute, which has as its object the nullification of a contract, 'arises out of' that same contract;" the court found that it did. *Id*. at 642. In *Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, the court extended the holding in *Sweet Dreams* to a forum-selection clause and

9

described *Sweet Dreams* as concluding "that all disputes the resolution of which arguably depend on the construction of an agreement 'arise out of' that agreement for purposes of an arbitration clause." 28 F.3d 600, 603 (7th Cir. 1994) (citing *Sweet Dreams*, 1 F.3d at 642–43; *Hugel*, 999 F.2d 206; *S+L+H S.p.A. v. Miller-St. Nazianz, Inc.*, 988 F.2d 1518 (7th Cir. 1993)).

Here, the Defendant has not explained how the Plaintiff's negligence claims have their origin or genesis in that contract—claims that are not based on the purchase or delivery of LNG but rather on equipment and services provided by the Defendant after the LNG was delivered into the Plaintiff's possession and not referenced in the Spot Purchase Agreement. The Defendant has not identified any duty arising from the Spot Purchase Agreement that is invoked in the Plaintiff's Complaint. Nor has the Defendant argued that the allegations of the Complaint depend on the construction or interpretation of any aspect of the Spot Purchase Agreement. The Defendant has not cited or analyzed any provisions of the Spot Purchase Agreement other than the forum-selection clause itself. In other words, based on the allegations of the Complaint, the resolution of the Plaintiff's claims will not depend on the express or implied terms of the Spot Purchase Agreement.

Moreover, this is not a case in which the Plaintiff's allegations are structured in an attempt to avoid the forum-selection clause by recharacterizing a breach of contract claim as a fraudulent breach, fraudulent inducement, or fraudulent performance claim. *See Kochert*, 491 F.3d at 679; *Am. Patriot*, 364 F.3d at 889; *Payne v. N. Tool & Equip. Co.*, Cause No. 2:13-CV-109, 2013 WL 6019299, at *4 (N.D. Ind. Nov. 12, 2013) (recognizing that "a plaintiff cannot defeat a forum-selection clause 'by its choice of . . . legal theories to press'" but nevertheless finding that the trademark infringement and unfair competition claims did not fall within the "arises under or in connection with" language of the forum-selection clause because the claims

did not require interpretation of the agreement (quoting *Kochert*, 491 F.3d at 679; *Am. Patriot*, 364 F.3d at 889)).

In an attempt to bring the allegations of the Complaint within the forum-selection clause, the Defendant argues in its reply brief that the only reason it provided the equipment and monitoring services to the Plaintiff was in relation to the Plaintiff's purchase of LNG from the Defendant under the Spot Purchase Agreement. The Defendant explains that it is not in the business of leasing equipment or simply providing LNG monitoring services. Rather, it provided the equipment and monitoring services because the Plaintiff purchased the LNG from the Defendant. This argument amounts to an assertion of but-for causation, which the Seventh Circuit has rejected when a forum-selection clause contains "arising out of" language. *See Omron*, 28 F.3d at 602 ("But-for causation is an unsatisfactory understanding of language referring to 'disputes arising out of' an agreement."). In rejecting the application of but-for causation, the court framed the issue with this hypothetical: "Let us suppose that while inspecting [the plaintiff's] facilities, a manager of [the defendant] stepped on a baby rattle and fell. Would the ensuing tort litigation go to the [chosen forum] just because, but for the distribution agreement, none of [the defendant's] employees would have been on [Plaintiff's] premises?" *Omron*, 28 F.3d at 602.

In this case, although the Defendant may not have provided equipment and monitoring services if the Plaintiff had not purchased LNG from the Defendant, it does not follow that the provision of equipment and monitoring service was covered by the terms Spot Purchase Agreement such that a dispute about the equipment and monitoring services "arises out of" the Spot Purchase Agreement. *See, e.g*, *Payne*, 2013 WL 6019299, at *5 ("[J]ust because the parties have entered an agreement containing a forum-selection clause does not mean that any potential dispute they may encounter will be subject to that clause, even where the dispute would not have

11

occurred but for the agreement."); *Andersen v. Res-Care, Inc.*, No. 1:05-CV-391-TLS, 2006 WL 842394, at *4 (N.D. Ind. Mar. 27, 2006) (finding that a forum-selection clause that applied to "litigation relating to this Employment Agreement" did not apply to an employee's claim under the Americans with Disabilities Act because the forum-selection clause did not apply "to all litigation relating to the Plaintiff's employment"). As set forth in detail above, the terms of the Spot Purchase Agreement were limited to the purchase and delivery of LNG.

For all these reasons, the Plaintiff's claims based on the Defendant's provision of equipment and related monitoring services to the Plaintiff at the Plaintiff's Parr, Indiana facility do not arise out of the Spot Purchase Agreement. Therefore, the forum-selection clause is not applicable to the Plaintiff's claims in this case.

    c.        Application of 28 U.S.C. § 1404(a)

Because the forum-selection clause does not apply in this case, the Court turns to the traditional § 1404(a) factors. First, as set forth above, venue is proper in this district because the fire giving rise to the claims occurred at the Plaintiff's facility in Parr, Indiana, which is within this district. *See* 28 U.S.C. § 1391(b)(2). Second, the Southern District of Indiana is a district where the case might have been brought because the Defendant resides in that district. *See* 28 U.S.C. § 1404(a); 28 U.S.C. § 1391(b)(1), (d). The statutory factors a court must consider in light of all the circumstances of the case are (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interest of justice. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). The burden is on the moving party to demonstrate that the transferee forum is clearly more convenient. *Id*. at 219–20.

In weighing the convenience of the parties and witnesses, a court should consider factors such as "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to

the parties of litigating in the respective forums." *See Schumacher v. Principal Life Ins. Co.*, 665 F. Supp. 2d 970, 977 (N.D. Ind. 2009); *see also Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). A plaintiff's choice of forum is generally entitled to substantial weight, particularly when the plaintiff is a resident of the judicial district. *See Piper Aircraft Co.*, 454 U.S. at 255–56; *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663–64 (7th Cir. 2003) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947))).[2] Transfer is not warranted when doing so would simply shift the inconvenience of the litigation from one party to the other. *See Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 857 (N.D. Ill. 2007); *see also Research Automation*, 626 F.3d at 978.

Here, the Plaintiff resides in this district, so its choice of forum is entitled to deference. In addition, the material events occurred in this district. In its briefs, the Defendant addresses transfer under § 1404(a) based on the premise that the forum-selection clause is applicable and, thus, does not offer a full analysis of the traditional factors. The only factor the Defendant addressed is the convenience of the witnesses, asserting that there would be minimal, if any, impact on the prospective witnesses if the action is transferred. The Court finds that the Defendant has not met its burden of demonstrating that the Southern District of Indiana is clearly more convenient and denies the motion.

---

[2] 28 U.S.C. § 1391(d) defines the residency of corporations in states with multiple districts:
> For purposes of venue under this chapter, in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, *such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State*, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

28 U.S.C. § 1391(d) (emphasis added).

3. *Motion for Leave to File Sur-Reply*

In the Motion for Leave to File a Surreply [ECF No. 14], the Plaintiff argues that the Defendant raised for the first time in its reply brief certain Seventh Circuit cases addressing the issue of the "arising out of" language in a forum selection clause. However, the Defendant's opening brief sufficiently discussed the "arising out of" language in the Spot Purchase Agreement and cases construing such clauses that this is not a new issue. Def.'s Br. 3–4, ECF No. 11. Notably, the Plaintiff's response brief contends, in a detailed analysis, that the forum-selection clause does not apply because the claims in its Complaint do not arise out of the Spot Purchase Agreement. The Court denies the Plaintiff's motion.

## CONCLUSION

Based on the foregoing, the Court hereby DENIES Plaintiff's Motion for Leave to File Surreply [ECF No. 14] and DENIES Defendant LNG Indy, LLC d/b/a Kinetrex Energy's Motion to Dismiss or in the Alternative Transfer Venue [ECF No. 10].

SO ORDERED on April 27, 2021.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT